# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN – SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ex. rel. PAMELA SATCHWELL, DAWN KASDORF, and BETHANY SILVA-GOMEZ, | Case No. 2:17-cv-12315<br>Hon. Laurie J. Michelson<br>Magistrate Elizabeth A. Stafford |
| Plaintiff, | |
| v | |
| VINAY MALVIYA, M.D., VINAY MALVIYA, M.D., P.C., ST. JOHN PROVIDENCE HEALTH SYSTEM, ASCENSION HEALTH, and CRITTENTON HOSPITAL MEDICAL CENTER, Jointly and Severally, | |
| Defendants. | |

**BENDURE & THOMAS, PLC**
MARK R. BENDURE (P23490)
Counsel for Plaintiff
15450 E. Jefferson Ave., Suite 110
Grosse Pointe Park, MI 48230
(313) 961-1525

**ROBERT E. BERG, JR., P.C.**
ROBERT BERG, JR. (P72612)
Counsel for Plaintiff
39850 Van Dyke Avenue
Sterling Heights, MI 48313
(586) 979-1992

# *REDACTED* FIRST AMENDED COMPLAINT AND JURY DEMAND

Plaintiff UNITED STATES OF AMERICA, on relation of PAMELA SATCHWELL, DAWN KASDORF, and BETHANY SILVA-GOMEZ, by and

through their attorneys, BENDURE & THOMAS, PLC and ROBERT E. BERG, JR., P.C., states by way of Complaint that:

## Parties and Jurisdiction

1. Relator PAMELA SATCHWELL ("Satchwell") is a resident of Dearborn, Michigan within the jurisdiction of the United States District Court for the Eastern District of Michigan.

2. Relator DAWN KASDORF ("Kasdorf") is a resident of Waterford, Michigan within the jurisdiction of the United States District Court for the Eastern District of Michigan.

3. Relator BETHANY SILVA-GOMEZ ("Silva-Gomez") is a resident of Chesterfield, Michigan within the jurisdiction of the United States District Court for the Eastern District of Michigan.

4. Defendant VINAY MALVIYA, M.D. is a physician licensed to practice medicine in the State of Michigan who resides and practices medicine, primarily in the fields of gynecology and gynecological oncology, within the jurisdiction of the United States District Court for the Eastern District of Michigan.

5. Defendant VINAY MALVIYA, M.D., P. C. is a Professional Corporation owned by Defendant VINAY MALVIYA, M.D. (both Defendants are referred to as "Malviya" in this Complaint), which employed Defendant

VINAY MALVIYA, M.D. and through which the billings and medical records at issue in this case were submitted.

6. Defendant CRITTENTON HOSPITAL MEDICAL CENTER ("Crittenton") is a corporation which provided medical services to patients in the metropolitan Detroit area within the jurisdiction of the United States District Court for the Eastern District of Michigan from on and before August 1, 2011 until 2015, at which time it became part of Defendant ASCENSION HEALTH.

7. Defendant ST. JOHN PROVIDENCE HEALTH SYSTEM ("St. John") is a corporation, or group of affiliated corporations, which operated multiple hospitals in the metropolitan Detroit area within the jurisdiction of the United States District Court for the Eastern District of Michigan from on and before August 1, 2011 until 2015, at which time it became part of Defendant ASCENSION HEALTH.

8. Defendant ASCENSION HEALTH ("Ascension") is a corporation which provides medical services to patients in the metropolitan Detroit area within the jurisdiction of the United States District Court for the Eastern District of Michigan.

9. Defendants Crittenton, St. John, and Ascension, collectively referred to as "the Hospitals" in this Complaint employed, or contracted with, Defendant Malviya to perform medical services under which the Hospitals

and Malviya were paid for billings submitted to the United States of America for medical services purportedly provided by Malviya.

10. This suit is filed pursuant to the False Claims Act, 31 USC §3729, et. seq.

11. The activities of Defendants which are the subject of this suit were performed within the jurisdiction of the United States District Court for the Eastern District of Michigan.

## Allegations of Background Fact

12. From on or about August 1, 2011 and thereafter, Defendant Malviya practiced medicine, primarily in the fields of gynecology and gynecological oncology, at the Hospitals.

13. From on and after August 1, 2011, Defendant VINAY MALVIYA, M.D. was an employee and agent of Defendant VINAY MALVIYA, M.D., P.C. whose acts, as detailed in this Complaint, were in the scope of his employment.

14. At the Hospitals, Malviya treated patients whose medical care was funded by the United States of America through Medicare, Medicaid, and other government funding programs.

15. Under the relationship between Defendants Malviya and the Hospitals, all derived financial benefits from payments made by the United States of America for billings submitted by Defendants for medical services which

they represented were actually performed by Defendant Malviya as necessary and appropriate medical care.

## Count I – Violation Of The False Claims Act

16. Plaintiff adopts and incorporates by reference paragraphs 1 to 15, inclusive, of this Complaint as if repeated word for word.

17. From about August of 2016 to present, Relator Satchwell has worked with Malviya as a transcriptionist at the Southfield and Novi facilities from which Malviya practices.

18. An estimated 90% of the patients of Dr. Malviya at that facility received medical care paid for by the Medicaid, Medicare or other source of payment by the United States of America.

19. In her capacity as medical transcriptionist, Relator Satchwell was required by Malviya to prepare medical chart notations and other writings which purport to memorialize medical procedures and services for which the patient or other payor is billed, such as the United States of America, and for which payment is made.

20. Relators Satchwell and Silva-Gomez often accompanied Malviya when he examined patients, to provide a female presence during gynecological examinations and treatment, and they have first-hand knowledge of the treatment which Malviya did and did not provide during the examinations conducted in their presence.

21. As a result of her activities and employment responsibilities, Relator Satchwell has personal knowledge of many of the billings at issue in this case, as well as the activities and treatment Malviya did and did not perform on patients.

22. In December of 2016, Relator Satchwell was called at about 2:00 a.m. and unexpectedly required by Malviya to work throughout the early morning to create progress notes and other writings in patient files for 2016 and earlier years, making up reports of treatment that did not exist in the original patient records.

23. Over the following two weeks or so, Relator Satchwell, at the direction of Malviya, was required to create additional record entries in patient files where no such documentation existed.

24. All told, Relator Satchwell estimates that in December of 2016 and January of 2017, she was required to add entries regarding review of systems to the prior patient files of about one thousand (1,000) patients whose files did not previously include review of systems.

25. Relator Satchwell was informed and believes that the backdated medical records she was required to create were intended by Malviya to justify earlier billings for which there was no prior documentary support.

26. After this alteration of records, Malviya would later order insertion of the past review of systems into records of later examinations, even though those services were not performed at the later examinations.

27. In this fashion, Malviya billed for system reviews on subsequent patient meetings when he did not perform the work billed for.

28. Relator Satchwell has learned that Malviya bills for conducting "rounds", visiting patients with residents to oversee and supervise them.

29. Relator Satchwell was instructed by Malviya to forge his signature on electronic records stating that he had observed and approved patient histories taken by residents entrusted to his oversight and supervision.

30. On several of the days for which Malviya billed for these rounds, Relator Silva-Gomez was told by the residents that Malviya had not been in the hospital for the past two or three days.

31. Malviya's income was based in part on the system reviews he conducted on patients - - the number of different examinations or conditions reviewed - - with additional payments for additional system reviews.

32. In this fashion, Malviya billed for system reviews on subsequent patient meetings when he did not perform the work billed for.

33. Relator Satchwell was instructed by Ascension to locate patient visit notes that would justify billings made by Malviya, but has determined that numerous records, about 2,000 in number, are missing, indicating that Malviya has billed, and been paid for, claimed services for which there is no documentary support.

34. On or about August 3, 2017, Malviya instructed Relator Satchwell to destroy all documents which reflected missing notes for patient visits he had billed.

35. Relator Satchwell has learned that Malviya is financially rewarded by the Hospitals, which in turn bill Medicaid, Medicare, a health insurer, or the patient for administrations of chemotherapy.

36. Relator Kasdorf is a registered nurse, practicing in the field of oncology since 2010, and is licensed to administer chemotherapy and biotherapy to cancer patients.

37. From about January of 2013 to July of 2017, Relator Kasdorf was employed at Ascension under the direction of Malviya to provide chemotherapy for Malviya's patients.

38. Relator Kasdorf is currently employed at Karmanos Cancer Institute as a clinical research nurse.

39. In the course of her professional responsibilities with Ascension and Malviya, Relator Kasdorf observed records reflecting that Malviya performed radical hysterectomies at a rate far exceeding that of other gynecological oncologists.

40. Relator Kasdorf will confirm that Malviya ignored existing reports from CARIS - - a genetic profiling service which identifies chemotherapy regimens appropriate for the patient's form of cancer - - or failed to obtain CARIS reports, for patients who had received multiple chemotherapy

sessions without significant progress, in order to administer unnecessary, or unnecessarily expensive, chemotherapy.

41. Because of the income generated by Malviya, Ascension has profited from and ratified the billing practices of Malviya by retaining his services despite actual knowledge of his overbillings, rampant improper medical practices injurious to patients, and use of unnecessary surgeries and chemotherapy.

42. As an example of Malviya's practices which increase billings, Malviya instructed the office nurse to schedule a radical hysterectomy for a patient, ▬▬▬▬▬▬▬▬▬▬ before even seeing her for the first time.

43. Relator Kasdorf will verify that Malviya had a practice of scheduling lesser surgeries, then performing radical hysterectomies, later claiming that a radical hysterectomy was required.

44. Relator Kasdorf is aware of instances in which Malviya performed and billed for chemotherapy administrations which exceeded the medically appropriate permissible number, including instances when the patient was near death and additional chemotherapy could accomplish no conceivable benefit while causing the patient unnecessary suffering, thereby increasing the billings and receipts for Malviya and the Hospitals.

45. Malviya administered chemotherapy to patients instead of referring them for clinical trials, or offering palliative care or hospice for patients who

9

have not responded to the full chemotherapy regimen, thereby increasing the billings and receipts for Malviya and the Hospitals.

46. As an example of medical inappropriate practices to inflate billings, Malviya ordered the use of unnecessary chemotherapy and unnecessary invasive procedures on ████████, who was not suffering from cancer.

47. Relator Kasdorf is aware that Malviya has been found guilty of overuse of Neulasta, causing dire side effects, when the use of Neulasta is contra-indicated.

48. Relator Silva-Gomez is a registered medical assistant employed by Ascension, under the direction of Malviya, from about July 25, 2016 to July of 2017.

49. Prior to her employment at Ascension, Relator Silva-Gomez had performed as a medical professional since 2003.

50. On December 20, 2016, Angela Young, who was employed as practice manager for Malviya, asked Relator Silva-Gomez to change the dates on clinical oncology notes and specimen billing codes, resulting in increased billings.

51. In April of 2017, Malviya scheduled several surgeries of a minor nature, but then performed major surgeries, increasing billings and receipts for himself and Ascension.

52. In March and April of 2017, Relator Silva-Gomez heard residents from the hospital complaining that Malviya was not making his daily rounds.

53. On March 21, 2017, a confidential peer review conducted by Dr. Steven Rivera and Ascension confirmed that several patients had been harmed by the gross negligence of Malviya in conducting unnecessary procedures and chemotherapy harmful to the patient.

54. Several of the instances of gross negligence by Defendant Malviya involved improper and unnecessary procedures that inflated billings.

55. Despite these findings, Ascension continued its relationship with Malviya.

56. After the peer review Relator Silva-Gomez was repeatedly instructed by Malviya to call patients to come in for surgery and unnecessary office visits because he needed to increase his revenue.

57. Relator Silva-Gomez is also aware that Malviya had a practice of mislabeling specimens in order to bill at a higher rate.

58. By about January of 2017, Relators had separately come to the conclusion that Malviya was engaged in misconduct designed to inflate billings to Medicare, Medicaid, medical insurers or patients, and the discussions of Relators with each other confirmed this belief.

59. In sum, from on or about August 1, 2011 and thereafter, Defendants Malviya, and the Hospitals engaged in a widespread program of submitting to the United States of America, and receiving payment for, false billings for services which they represented were performed by Defendants and were necessary and appropriate, but which were not in fact performed by

Defendants or were medically unnecessary or inappropriate, including but not limited to the conduct described above.

60. By their course of conduct, Defendants have engaged in activities prohibited by 31 USC §3729, including but not limited to:

   a. Knowingly presenting or causing to be presented false or fraudulent claims for payment or approval, including billings for medical services which Defendants did not in fact perform, or which were not medically necessary or appropriate.

   b. Knowingly making, using, or causing to be made or used false medical records or statements material to fraudulent claims.

   c. Conspiring between themselves to commit the violations detailed above.

61. By their course of conduct, Defendants have fraudulently obtained and retained payments from the United States of America for medical procedures which were not in fact performed as represented or were medically unnecessary or inappropriate.

62. Plaintiff seeks recovery of all losses compensable under the False Claims Act or other law, including but not limited to:

   a. All costs incurred in establishing Plaintiff's claim;

   b. All attorney fees incurred in establishing Plaintiff's claim;

      c. All losses, damages, and unwarranted payments caused by the unlawful conduct of Defendants, trebled in accord with 31 USC §3729(a)(1).

WHEREFORE, Plaintiff prays for judgment against Defendants, jointly and severally, in the amount it is deemed entitled to upon trial of this cause.

Respectfully Submitted,

| BENDURE & THOMAS, PLC | ROBERT E. BERG JR. P.C. |
|---|---|
| By: *[signature]* | |
| Mark R. Bendure (P23490) | Robert E. Berg (P10713) |
| Counsel for Plaintiff | Counsel for Plaintiff |
| 15450 E. Jefferson Avenue, Suite 110 | 39850 Van Dyke Ave., Suite 100 |
| Grosse Pointe Park, MI 48230 | Sterling Heights, MI 48313 |
| (313) 961-1525 | (586) 979-1992 |
| bendurelaw@cs.com | bberg62344@gmail.com |

Dated: September 18, 2017

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN – SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ex. rel. PAMELA SATCHWELL, DAWN KASDORF, and BETHANY SILVA-GOMEZ, <br><br> Plaintiff, <br><br> v <br><br> VINAY MALVIYA, M.D., VINAY MALVIYA, M.D., P.C., ST. JOHN PROVIDENCE HEALTH SYSTEM, ASCENSION HEALTH, and CRITTENTON HOSPITAL MEDICAL CENTER, Jointly and Severally, <br><br> Defendants. | Case No. 2:17-cv-12315 <br> Hon. Laurie J. Michelson <br> Magistrate Elizabeth A. Stafford |

| | |
|---|---|
| BENDURE & THOMAS, PLC <br> MARK R. BENDURE (P23490) <br> Counsel for Plaintiff <br> 15450 E. Jefferson Ave., Suite 110 <br> Grosse Pointe Park, MI 48230 <br> (313) 961-1525 | ROBERT E. BERG, JR., P.C. <br> ROBERT BERG, JR. (P72612) <br> Counsel for Plaintiff <br> 39850 Van Dyke Avenue <br> Sterling Heights, MI 48313 <br> (586) 979-1992 |

## JURY DEMAND

Plaintiff hereby requests trial by jury of all issues.

Respectfully Submitted,

BENDURE & THOMAS, PLC

By: /s/ Mark Bendure
MARK R. BENDURE (P23490)
Counsel for Plaintiff
15450 E. Jefferson Ave., Suite 110
Grosse Pointe Park, MI 48230
(313) 961-1525

Dated: September 18, 2017